FILED
2011 Jul-07 PM 12:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **TINA M. MILLIGAN,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **CV-10-BE-2620-NE** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of** ) | |
| **Social Security** ) | |
| ) | |
| **Defendant**. ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On February 26, 2007, the claimant, Tina M. Milligan, applied for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The claimant alleged disability beginning on October 1, 2005 because of her neuropathy, back and muscle problems, and history of special education. The Commissioner denied the claim. The claimant filed a timely request for a hearing before an Administrative Law Judge, who held a hearing on October 15, 2008. In a decision dated January 21, 2009, the ALJ found that the claimant was not disabled under the Act and was not eligible for benefits. The Appeals Council denied the claimant's request for review on July 29, 2010. The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court AFFIRMS the Commissioner's decision.

**II. ISSUES**

The claimant presents two issues for review: (1) whether substantial evidence supports

the ALJ's conclusion that she could perform work requiring an RFC of medium; and (2) whether the ALJ erroneously discredited her treating physician's opinion.

### III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if he applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2006); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that substantial evidence supports. Substantial evidence is more than a mere scintilla. It means evidence that a reasonable mind could accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court not only must look to the parts of the record that support the ALJ's decision but also must view the record in its entirety and take account of evidence that detracts from the evidence upon which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. LEGAL STANDARD

A person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

>(1) Is the person presently unemployed?
>(2) Is the person's impairment severe?
>(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, subpt. P, app. 1?
>(4) Is the person unable to perform his or her former occupation?
>(5) Is the person unable to perform any work within the economy?
>
>An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920 (2010).

In this case, the ALJ's conclusion that the claimant could perform work requiring a medium residual functional capacity ("RFC") must be supported by substantial evidence. *See Graham*, 129 F.3d at 1422. Medium work involves lifting no more than fifty pounds at a time and carrying no more than twenty-five pounds. 20 C.F.R. § 404.1567(c) (2010). The Commissioner must also accord a treating physician's opinion substantial weight unless no evidence bolsters the opinion, other evidence supports a contrary finding, or the physician's opinion is conclusory or contradictory to his own opinions. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). If an ALJ ever discredits a treating physician, he must articulate clear reasons for doing so. *Id*.

## V. FACTS

The claimant was thirty-six years old at the time of the administrative hearing and had reached the ninth grade level in a special education program. (R. 20, 36). She previously worked

3

as a nurse's aide, a short order cook, and a dishwasher. (R. 24). Claimant most recently alleged that her disability began on February 26, 2007. (R. 76). She stated that she was unable to work because of muscle problems, memory loss, difficulty learning, and difficulty standing and walking. The claimant is currently unemployed. (R. 105).

*Evidence of Physical and Mental Impairments*

Prior to her alleged onset of disability, the claimant experienced general muscle pain and difficulties reading, writing and remembering. She spent August 17 through August 27, 2005 at Princeton Baptist Medical Center under the care of Dr. Chris Phillips, an internist. There, she received numerous nerve tests and diagnoses of peripheral neuropathy, anemia, and other resolved symptoms. (R. 167). She then began physical therapy at Sports First Rehab, where she met her short-term goals of increasing her strength and improving her gait, balance, and function. Her therapist noted that the claimant was too weak to attend rehab twice per week and that she should begin home care. From November to January, she continued to improve but stopped participating in therapy around January 20, 2006. (R. 198-214).

On her April 16, 2007 visit to Dr. Bharat Vakharia, an internist, the claimant complained of leg weakness and back pain. Dr. Vakharia observed that she had significant tenderness of the lower spine and noted that she had urinary incontinence and memory impairment. (R. 263-64). On May 7, 2007, Dr. Mary Arnold, a doctor of psychology, examined the claimant, finding that she could perform basic cognitive and memory tasks and put forth "good effort." She found that claimant earned a full scale IQ of 75 and a Global Assessment of Functioning score of 57. (R. 267-71).

Prior to the ALJ hearing, a few consultative physicians reviewed the claimant's mental and physical abilities. Dr. Steven Dobbs, the Commissioner's consultative psychologist, reviewed the claimant's records and determined that she could not understand or remember complex instructions, nor could she sustain attention for more than two hours. She suffered moderate limitations in completing a normal workday and adapting to changes in a work environment. (R. 312-14). Dr. Eston Norwood, an examining consultative neurologist, found that the claimant's specific neurological problems did not limit her work abilities. (R. 325-26). Then, Dr. Samuel Chastain, the Commissioner's non-examining consultative physician, evaluated the claimant's general physical RFC and found that she could occasionally lift fifty pounds, frequently lift twenty-five, and stand or walk with normal breaks for six hours per day. In reaching these conclusions, Dr. Chastain credited Dr. Norwood's testimony over Dr. Russell's conflicting statements that claimant could not work because Dr. Norwood was a neurological specialist. (R. 328-35).

The claimant's educational records indicate that she scored below average on most standardized tests and received a cross-section of A's through F's in special education classes from sixth through ninth grade. (R. 83-99).

*Dr. Russell and his Opinion*

Dr. Bruce W. Russell is a general practitioner. Each of the claimant's records from at least 2005 until 2007 list Dr. Russell as her primary care physician. On August 9, 2005, Dr. Russell ordered an ultrasound in response to abdominal pain, but the procedure revealed no significant abnormalities. On the same day, a CT scan showed potential jaundice and fatty liver infiltration. On December 12, 2006, Dr. Russell noted that the claimant could not walk or breathe

5

and was vomiting. (R. 254-58). Next, on July 24, 2007 and April 22, 2008 the doctor again reported that the claimant could not walk and suffered from chronic pain and accompanied his report with a spine x-ray, which showed disc space height loss and mild scoliosis (R. 344). Finally, three months later, he completed a physical functional assessment in which he marked that she could never perform any physical activity or work. He listed leg weakness, unsteady gait, and neuropathy as clinical findings that supported his opinion regarding her complete inability to stand, sit, and walk. He did not cite findings to support the assertion that she could never perform about twenty other simple physical tasks. (R. 350-51).

*The ALJ Hearing*

On October 15, 2008, the ALJ held a hearing with the claimant, her representative, and a vocational expert. He began by asking the claimant about her daily routine, and she responded that she watches television frequently, does not participate in any outdoor activities, visits her sister a few times per month, and does not go shopping on her own. She also told the ALJ that she took a pill for blood count and Protonix for her stomach, both daily. (R. 37).

The claimant's representative next questioned her about her visits with Dr. Russell. She reported that he held short sessions with her, usually fifteen minutes, and regularly gave Vitamin B12 injections for her fatigue. The claimant then explained that she takes at least two thirty minute naps per day because of that fatigue. Next, the representative noted that claimant had arrived at the hearing with a cane and questioned her about muscle problems. The claimant said that she suffered from sporadic numbness and pain in her hands and that this condition prevented her from carrying objects like milk jugs. The claimant also reported back pain, for which she took four to six Tylenol or ibuprofen daily. (R. 40-45).

Before moving on, the representative informed the claimant that a free local clinic could help her with medication and treatment. The claimant responded that she had not known about the clinic. Regarding claimant's neuropathy, doctors once diagnosed her with Guillain-Barre syndrome but did not treat her because her insurance was insufficient. The effects varied in their severity over the years; sometimes the claimant was wheelchair-bound, while other times she could walk without a cane. The claimant reported that her condition was presently deteriorating. (R. 45-49).

Lastly, the claimant answered the representative's questions about her pain. Claimant reported that sitting at the hearing, she experienced back, leg, and arm pain, the severity of which she rated at seven on a ten-point scale. Tylenol, ibuprofen, and monthly B12 shots helped sometimes, she testified. The ALJ asked claimant if she was attending "AA," and she replied that she was not. (R. 49-50).

Afterward, the ALJ questioned vocational expert Pasty V. Bramlett. The expert reviewed claimant's job history and found that her job as a nurse's aide required medium exertion and semiskilled proficiency; that her short order cook position required light exertion and very low semiskilled proficiency; and that the dishwasher job was medium and unskilled. Based on her acknowledged familiarity with the claimant's vocational profile, Bramlett stated that the claimant could perform the past relevant jobs of short order cook and dishwasher unless the ALJ credited Dr. Russell's statement that claimant could not work. Also, if he credited the claimant's testimony that she was in severe pain, she could not perform any job. (R. 51-54).

*The ALJ Decision*

On January 21, 2009, the ALJ issued a decision that the claimant did not qualify as

disabled under the Act. He found that the claimant had not engaged in substantial gainful activity since February 26, 2007 and that she had many severe impairments. These impairments included neuropathy consistent with Guillain-Barre syndrome, disk-space height loss with mild scoliosis, ulcers with resulting blood loss anemia, a history of adjustment disorder, a history of special education, and alcohol dependency in reported remission. None of these impairments alone or in combination satisfied listing 1.04 or 12.04, he concluded, after finding that evidence did not support a key element of each listing. (R. 15-16).

The ALJ found that claimant had a medium physical RFC qualified by the single limitation that she could not climb ladders. (R. 329). Mentally, the claimant had moderate limitations working with complex instructions, paying attention for extended periods, following a schedule, completing a workday without psychological symptoms, and adapting to changes in a workplace. (R. 312-14). The ALJ engaged in an extensive analysis of every aspect of the record to reach his conclusion, but he relied on three key findings. First, many of the claimant's statements were not credible. He found that her testimony regarding pain was not credible because she lacked objective evidence showing a condition that could reasonably be expected to cause disabling pain. He also discredited her testimony that she had to urinate frequently and that she was not able to perform basic daily activities. (R. 20). Second, she did not seek medical treatment more than once annually after the alleged onset date.

Third, the ALJ expressed that Dr. Russell, claimant's primary care physician, had not supported his statement that the claimant could not work with objective medical evidence. Because Dr. Russell's statement was conclusory, the ALJ reasoned, other consultative

physicians' opinions supporting a medium RFC bore more weight. Thus, he concluded that the claimant was not entitled to benefits under the Act. (R. 23-24).

## VI. DISCUSSION

The claimant rejects both the ALJ's conclusion that she could perform medium work and his decision to discredit treating physician Dr. Russell's conclusion to the contrary. This case presents conflicting medical opinions offered by multiple doctors on each of these issues. For the reasons stated below, the court finds that the ALJ properly credited the opinions of Drs. Chastain and Norwood over that of Dr. Russell.

Numerous exhibits support the ALJ's finding that the claimant could perform work at the medium level. Medium work involves lifting no more than fifty pounds at a time and carrying no more than twenty-five pounds. 20 C.F.R. § 404.1567(c) (2010). Therapy records from August 2005 until January 2006 show that claimant recovered well, had substantial mobility and motor function in later sessions, and eventually stopped attending sessions. Moreover, Dr. Chastain evaluated the claimant's physical RFC in light of the neurological impairments that Dr. Norwood had identified. Both doctors found that the impairments did not affect work related activities. Dr. Chastain concluded that the claimant could perform all work consistent with a medium RFC except for climbing a ladder, rope, or scaffold. (R. 330). Therefore, considered alone, these medical opinions constitute substantial evidence in support of the ALJ's RFC findings.

One potentially important piece of evidence in the record clashes with this evidence though. Contrary to Dr. Chastain, the claimant's treating physician Dr. Russell alleged that the claimant's disability was so severe that she could not perform any physical tasks. (R. 350-51) (asserting that the claimant could *never* sit, stand, walk, lift, or carry). This court must affirm if

substantial evidence supports the ALJ's choice to side with Dr. Chastain and Dr. Norwood over Dr. Russell. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

The ALJ relied on substantial evidence when he discredited Dr. Russell's suggestion that the claimant could not perform any work. To be sure, an ALJ must accord a treating physician's opinion substantial weight unless good cause exists to reject it. *Phillips*, 357 F.3d at 1240. Good cause exists when no evidence supports the treating physician's opinion, other evidence supports a contrary finding, or the opinion itself is conclusory. *Id*. An ALJ who relies on one of these exceptions in discrediting a treating physician's opinion must clearly articulate his reasons for doing so. *Id*. Substantial evidence shows that Dr. Russell's conclusion was contrary to the weight of the evidence already discussed. Dr. Norwood concluded that claimant's neurological impairments did not affect her work abilities. Dr. Chastain considered both Dr. Norwood and Dr. Russell's opinions when he concluded that the claimant could exert a medium level of physical effort. (R. 328-35). These contrary findings thus pose substantial evidence on which the ALJ explicitly relied to reach his conclusion. (R. 23).

The ALJ also correctly reasoned that Dr. Russell's opinion deserved less weight because the claimant did not see him frequently during the alleged disability period. The weight that the Commissioner must accord a treating opinion correlates with the length of time that physician has treated the claimant and the amount of knowledge he has about the claimant's impairments. 20 C.F.R. § 404.1527(d)(2)(i) (2010). The ALJ noted that like Dr. Norwood, Dr. Russell saw the claimant only once for the ailments she now claims disable her. (R. 344-45). Moreover, Dr. Norwood, as a board certified neurologist, was better qualified to comment on the specific effects and severity of the claimant's neuropathy than Dr. Russell, a family physician. Therefore, the

ALJ's decision not to give Dr. Russell's opinion full deference was proper.

Finally, the dispositive finding that a claimant is disabled is solely an issue for the Commissioner to decide. 20 C.F.R. § 416.927(e)(1) (2010); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986). Therefore, Dr. Russell's conclusory statements that the claimant is disabled do not entitle her to benefits. Additionally, an ALJ may discredit conclusory opinions rendered by treating physicians. *Philips*, 357 F.3d at 1240. The ALJ did just that when he noted that Dr. Russell's opinion was in large part conclusory. (R. 23). He did not accompany his remarkable opinion that the claimant could *never* perform around twenty simple physical tasks with any clinical findings. (R. 350). Upon consideration of all of the evidence, the court finds that substantial evidence undermined Dr. Russell's assessment that the claimant was disabled.

## VII. CONCLUSION

For the reasons stated above, the ALJ did not err in his legal analysis, and substantial evidence supports his decision. This court will thus AFFIRM the Commissioner's decision and enter a separate order consistent with this memorandum opinion.

DONE and ORDERED this 7th day of July, 2011.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE